[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-12462

_____

D.C. Docket  No. 3:12-cv-00183-MCR-CJK


BAYOU LAWN & LANDSCAPE SERVICES,
CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA,
NATIONAL HISPANIC LANDSCAPE ALLIANCE,
SILVICULTURAL MANAGEMENT ASSOCIATES, INC.,
PROFESSIONAL LANDCARE NETWORK, et al.,

                                        Plaintiffs-Appellees,

                        versus

SECRETARY OF LABOR,
JANE OATES,

                                        Defendants-Appellants,


PINEROS Y CAMPESINOS UNIDOS DEL NOROESTE,
COMITE DE APOYO A LOS TRABAJADORES,
JAHEMEL ABULECHE,
ROMULO ABULECHE,
DEBORAH SANTANA,
MARIA RAMIREZ HERNANDEZ,

                                        Intervenor Defendants.

_____

Appeals from the United States District Court
for the Northern District of Florida
_____

(April 1, 2013)

Before WILSON and HILL, Circuit Judges, and HUCK,* District Judge.

HILL, Circuit Judge:

Plaintiffs in this case challenge certain rules issued by the Department of Labor governing the employment of temporary, non-agricultural foreign workers, asserting that the Department of Labor had no authority to issue these rules. The district court agreed and granted plaintiffs a preliminary injunction prohibiting the enforcement of the rules during the pendency of this action. The Department of Labor filed this appeal.

I.

The Immigration and Nationality Act of 1952 (the "INA") established a framework for the regulation of immigration that includes provisions for

_____

*Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.

2

permanent and temporary foreign workers. In 1986, Congress amended the statute to provide for separate programs for agricultural and non-agricultural workers. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a), (b). The H-2B program governs non-agricultural workers.[1] It permits an employer to hire an individual "having a residence in a foreign country which he has no intention of abandoning who is coming temporarily to the United States to perform other temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country . . . ." 8 U.S.C. § 1101(a)(15)(H)(ii)(b). It is used primarily by small businesses, including landscaping, hotel, construction, restaurant and forestry businesses.[2]

The INA initially vested all authority for implementing its provisions – including rulemaking for the H-2B program – in the Attorney General of the United States. Later, Congress transferred this authority to the Department of Homeland Security (the "DHS").[3] In 1986, when Congress split the agricultural workers and the non-agricultural workers into two separate programs, Congress granted the Department of Labor (the "DOL") limited rulemaking authority over

---

[1] The H-2A program governs agricultural workers.

[2] All of the plaintiffs in this action participate in the H-2B program or are comprised of members who participate in the program.

[3] The "Secretary of Homeland Security shall be charged with the administration and enforcement of [the INA]" and "shall establish such regulations . . . as he deems necessary for carrying out his authority under the provisions of this chapter." 8 U.S.C. § 1103(a).

3

the agricultural H-2A program, but declined to extend that authority to the non-agricultural program.  The DOL does not dispute that it has no *express* authority to make rules for the H-2B program.

Nonetheless, the DOL has engaged in legislative rulemaking for the H-2B program.  In 2011, DOL published proposed new rules in the Federal Register that would make significant changes in how the program is administered.[4]  Plaintiffs filed this action, arguing that DOL has no authority to issue the rules.  DOL counters that its authority may be inferred from the "statutory scheme [that] shows a Congressional intention to grant [it] rulemaking power."  The district court rejected this argument, holding that plaintiffs are likely to succeed on the merits of their claim.  The district court also held that plaintiffs demonstrated a substantial threat of irreparable harm to them from the implementation of the new rules, that the threatened harm outweighed whatever damage the injunction might cause DOL, and that the injunction would not be adverse to the public interest.  We review the grant of the preliminary injunction under the deferential abuse of discretion standard.  *Bailey v. Gulf Coast Transp., Inc.*, 280 F.3d 1333, 1335 (11th

---

[4] These rules would decrease the maximum number of months an employer may employ an H-2B worker from ten to nine; require employers to guarantee that H-2B employees will work at least seventy-five percent of the hours certified in any twelve-week period and, if not, pay the employees the difference for the time not worked; require employers to pay non H-2B workers' wages and benefits at least equal to those paid to H-2B workers if the two perform "substantially the same work;" require employers to pay for the round-trip airfare and subsistence costs of H-2B workers; and impose additional bureaucratic requirements, such as the filing of job orders, performing extensive domestic recruitment, and applying for a temporary labor certification.

Cir. 2002). We review the district court's conclusions of law, however, *de novo*. *Id*.

## II.

1.    *Plaintiffs' Likelihood of Success on the Merits*

In its proposed and final rules, DOL cited two statutory provisions as the source of its rulemaking authority. First, DOL cited 8 U.S.C. § 1184(c)(1), which instructs the Secretary of DHS to consult with the "appropriate agencies of the Government" in resolving whether to grant a foreign worker a visa upon the "petition of the importing employer." Although there is no grant of rulemaking authority to DOL in this statutory section, DOL asserts that as the result of the permission it grants to DHS to consult with it, DOL "has authority to issue legislative rules to structure its consultation with DHS." The end result, in DOL's view, is that it is empowered to engage in rulemaking, even *without* the DHS.

We reject this interpretation of "consultation." Under this theory of consultation, any federal employee with whom the Secretary of DHS deigns to consult would then have the "authority to issue legislative rules to structure [his] consultation with DHS." This is an absurd reading of the statute and we decline to adopt it.

5

DHS was given overall responsibility, including rulemaking authority, for the H-2B program.  DOL was designated a consultant.  It cannot bootstrap that supporting role into a co-equal one.

Secondly, DOL cited 8 U.S.C. § § 1101(a)(15)(H)(ii)(b) as statutory authority for its proposed new rules.  This provision defines an H-2B worker as a temporary worker who comes to perform a job that cannot be filled by people already in the country.  Again, there is no grant of rulemaking authority in this statutory section, and it is not apparent how DOL's authority to make rules is implied by this section.

Furthermore, the immediately preceding statutory section, which defines an agricultural worker, expressly *grants* DOL rulemaking authority over the agricultural worker *H-2A* program.  The absence of a delegation of rulemaking authority to DOL over the non-agricultural H-2B program in the presence of a specific delegation to it of rulemaking authority over the agricultural worker H-2A program persuades us that Congress knew what it was doing when it crafted these sections.  *See Dean v. United States*, 556 U.S. 568, 573 (2009) ("where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion").  We conclude that the

6

district court did not err when it decided that neither of these two statutory provisions supports any rulemaking authority in DOL over the H-2B program.

DOL next argues that the "text, structure and object" of the INA evidence a congressional intent that DOL should exercise rulemaking authority over the H-2B program.  This would be a more appealing argument if Congress had not expressly delegated that authority to a different agency.  Even if it were not axiomatic that an agency's power to promulgate legislative regulations is limited to the authority delegate to it by Congress, *see Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988), we would be hard-pressed to locate that power in one agency where it had been specifically and expressly delegated by Congress to a different agency.

Furthermore, if congressional silence is a sufficient basis upon which an agency may build a rulemaking authority, the relationship between the executive and legislative branches would undergo a fundamental change and "agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with *Chevron* and quite likely with the Constitution as well."  *Ethyl Corp. v. EPA*, 51 F.3d 1053, 1060 (D.C. Cir. 1995).[5]

---

[5] The DOL also argues in its appellate brief that its rulemaking authority can be inferred from the "relationship between the Wagner-Peyser Act and the INA."  We find that DOL has waived this argument by not presenting it to the district court in a timely manner.  In any event, the reliance on a statute that is limited to the funding, operation and coordination of state unemployment offices cannot be stretched to authorize DOL to issue rules to implement a visa program committed by law to the governance of another agency.

We conclude that plaintiffs have shown a substantial likelihood of success on the merits of their claim that DOL has exercised a rulemaking authority that it does not possess.

2.    *Irreparable Harm, Danger of Delay to DOL, Public Interest*

The district court took evidence at its hearing on each of the remaining factors to be considered prior to granting a preliminary injunction.  The court found that the plaintiffs had demonstrated that the new rules would have an immediate and significant impact on them, resulting in lost revenue, customers, and/or goodwill.  We find no clear error in these findings of fact.  We have held that these facts support a finding of irreparable injury.  *See BellSouth Telecomm., Inc., v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005).  Accordingly, we find no reversible error in this holding.

As to the danger of delay in the implementation of the rules, the district court found that DOL did not articulate any harm it would suffer as a result in a delay.  On appeal, DOL argues that it is harmed by having "its entire regulatory program called into question."  This is not an appealing argument.  If the "entire regulatory program" is *ultra vires*, then it should be called into question.

III.

8

Having found that the district court's legal conclusion regarding the plaintiffs' likelihood of success on the merits is without error, and that its findings of fact supporting its conclusions that none of the other factors militates against the issuance of the preliminary injunction are without clear error, we hold that the judgment of the district court that the preliminary injunction should issue is due to be

AFFIRMED.