**BAYOU LAWN & LANDSCAPE SERVICES, et al.,**
Plaintiffs,

v.

**Thomas E. PEREZ, et al., Defendants.**

**Case No. 3:12cv183/MCR/CJK.**

United States District Court,
N.D. Florida,
Pensacola Division.

Signed Dec. 18, 2014.

Laura Metcoff Klaus, Robert Phillip Charrow, Greenberg Traurig LLP, Washington, DC, Laura Foote Reiff, Michael R. Sklaire, Greenberg Traurig PA, McLean, VA, Monte.Benton Lake, Wendel Vincent Hall, CJ Lake LLC, Washington, DC, for Plaintiffs.

Geoffrey Forney, Glenn Matthew Girdharry, U.S. Department of Justice, Washington, DC, for Defendants.

## *ORDER*

M. CASEY RODGERS, Chief Judge.

The Plaintiffs in this case challenge a regulation issued by the United States Department of Labor ("DOL") in connection with the H–2B visa program on grounds that DOL had no authority to issue the regulation.[1] *See Temporary Non–Agricultural Employment of H–2B Aliens in the United States,* Final Rule, 77 Fed.Reg. 10,038 (Feb. 21, 2012). The parties have filed cross-motions for summary judgment. For the reasons set forth below, the Court finds that Plaintiffs' motion should be

---

1. Plaintiffs also claim the regulation was issued in violation of the Regulatory Flexibility Act ("RFA"), 5 U.S.C. § 601 *et seq.* Given the Court's ruling on the issue of DOL's authority, however, the RFA claim need not be addressed.

granted and Defendants' motion should be denied.

## Background [2]

The Immigration and Nationality Act of 1952 ("INA") established a comprehensive statutory framework for the regulation of immigration in this country. *See* Immigration and Nationality Act of 1952 ("INA"), 66 Stat. 163, as amended, 8 U.S.C. § 1101 *et seq.* In relevant part, the INA included provisions for permanent and temporary foreign workers and provided a means through which those workers could enter the United States for employment purposes as long as certain conditions were met. Prior to 1986, a single program existed for all temporary foreign workers. Congress decided, however, that the earlier program did not "fully meet the need for an efficient, workable and coherent program that protect[ed] the interests of agricultural employers and workers alike" and therefore amended the INA as part of the Immigration Reform and Control Act of 1986 to provide for two separate programs: the H–2A program for agricultural workers and the H–2B program for non-agricultural workers. H.R.Rep. No. 99–682, pt. 1, at 80; *see also* Immigration Reform and Control Act of 1986, Pub. Law No. 99–603, § 301(a), 100 Stat. 3359, 3411 (codified at 8 U.S.C. § 1101(a)(15)(H)(ii)(a)).

Under the H–2B program, which is the program relevant to this case, an employer may hire an individual "having a residence in a foreign country which he has no intention of abandoning who is coming temporarily to the United States to perform other temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country ...." [3] *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(b). Congress vested authority for implementation of the INA's provisions in the Attorney General, but at the same time, directed the Attorney General to consult with other appropriate governmental agencies when considering applications for admission of H–2B workers. *See* 8 U.S.C. §§ 1184(a)(1) and (c)(1). Under the Homeland Security Act of 2002, Congress transferred enforcement of the immigration laws from the Attorney General to the Secretary of the Department of Homeland Security ("DHS"). *See* Homeland Security Act of 2002, Pub. L. No. 107–296, § 402, 116 Stat. 2135, 2178 (2002). Although DHS is charged with deciding whether to grant or deny applications for H–2B visas, it delegated to the Secretary of Labor the authority to "separately establish ... procedures for administering th[e] temporary labor certification program under his or her jurisdiction." 8 C.F.R. § 214.2(h)(6)(iii)(D). Consistent with this delegation of authority, DHS requires an employer seeking to petition for an H–2B visa to first apply for and receive a temporary labor certification from the Secretary of Labor. 8 C.F.R. §§ 214.2(h)(6)(iii)(A), (C). The certification constitutes "advice ... on whether or not United States workers capable of performing the temporary services or labor are available and whether or not the alien's employment will adversely affect the wages and working conditions of similarly employed United States workers." 8 C.F.R. § 214.2(h)(6)(iii)(A).

---

**2.** Because Plaintiffs have sued Defendants in their official capacities as the Secretary and Assistant Secretary of Labor, the Court refers to Defendants collectively throughout this order as "DOL."

**3.** The H–2B program derived its name from the subsection of the INA containing this definition. *Comite' De Apoyo A Los Trabajadores Agricolas v. Perez,* 774 F.3d 173, 177–78 (3d Cir.2014).

DOL first issued formal regulations establishing standards and procedures for certifying employers' requests to import H–2 workers in 1968. *See* 33 Fed.Reg. 7,570–01 (May 22, 1968). DOL later supplemented the regulations with informal, non-binding guidance letters. It was not until 2008 that DOL published another formal regulation governing the labor certification process. *See Labor Certification Process and Enforcement for Temporary Employment in Occupations Other Than Agriculture (H–2B Workers)*, 73 Fed.Reg. 78,020 (Dec. 19, 2008) (codified at 20 C.F.R. pts. 655–56). On February 21, 2012, DOL issued the regulation at issue in this case ("2012 Rule") and, in doing so, significantly changed the manner in which the H–2B program would be administered. *See Temporary Non–Agricultural Employment of H–2B Aliens in the United States*, 77 Fed.Reg. 10,038 (Feb. 21, 2012).[4]

In April 2012, Plaintiffs filed this lawsuit, seeking to invalidate the 2012 Rule based primarily on DOL's lack of rulemaking authority.[5] Following a hearing on Plaintiffs' motion for a preliminary injunc-

tion, the undersigned determined that Plaintiffs had demonstrated a substantial likelihood of success on the merits of their claim that DOL lacked rulemaking authority in connection with the H–2B program and preliminarily enjoined DOL from enforcing the 2012 Rule. DOL appealed the Court's order to the Eleventh Circuit, which in turn affirmed. *See Bayou Lawn & Landscape Servs. v. Sec'y of Labor*, 713 F.3d 1080 (11th Cir.2013). The parties later filed the pending cross-motions for summary judgment. Plaintiffs continue to maintain that DOL lacked authority to promulgate the 2012 Rule. In response, DOL argues that it had authority to issue the 2012 Rule under the Wagner–Peyser Act, 29 U.S.C. § 49 *et seq.*[6] DOL further argues that the Court lacks subject matter jurisdiction to proceed, an issue the Court will address first.

## Discussion [7]

### 1. Standing

 DOL argues, as it did in response to Plaintiffs' motion for a prelimi-

---

**4.** The 2012 Rule was scheduled to go into effect on April 23, 2012. Among other things, the 2012 Rule decreased the maximum number of months an employer may employ an H–2B worker from ten to nine; required employers to guarantee that H–2B employees work at least seventy-five percent of the hours certified in any twelve-week period and, if not, pay the employees the difference for the time not worked; required employers to pay non–H–2B workers wages and benefits at least equal to those paid to H–2B employees if the two perform "substantially the same work;" and required employers to pay the round-trip airfare and subsistence costs of H–2B employees. *See id.*

**5.** The Plaintiffs consist of small family-owned businesses with low profit margins, high costs, and long-term contracts with their customers and associations representing such businesses. Plaintiffs maintain that they depend on H–2B workers and that the 2012 Rule will substantially increase their costs of doing business.

**6.** DOL also argues in its motion that the Plaintiffs incorrectly state that DOL failed to cite statutory authority as a basis for its rulemaking and points out that in both the proposed and final rule, it cited 8 U.S.C. §§ 1101(a)(15)(H)(ii)(b) and 1184(c)(1) as the sources of its rulemaking authority; however, DOL nonetheless concedes that the Eleventh Circuit rejected this argument in the earlier appeal.

**7.** Considering that this matter involves purely legal issues, the Court need not provide a lengthy recitation of the summary judgment standard. Suffice it to say that summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). This standard applies to actions, such as the instant one, brought under the APA. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

nary injunction, that Plaintiffs lack standing to bring the claims asserted in this lawsuit. This time, DOL bases its standing argument on the constitutional principle of redressability, which is designed to ensure that the plaintiff's injury will likely, as opposed to merely possibly, be redressed by a favorable court decision.[8] *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal marks omitted); *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.,* 641 F.3d 1259, 1266 (11th Cir.2011) (quoting *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130 (internal quotation marks omitted)); *Fla. Family Policy Council v. Freeman,* 561 F.3d 1246, 1253 (11th Cir. 2009) (quoting *Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130). The Eleventh Circuit has recognized that "[r]edressability is established when a favorable decision would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Hollywood Mobile Estates,* 641 F.3d at 1266 (internal marks omitted).

On this issue, DOL argues that even assuming the Court decides the agency lacked authority to issue the 2012 Rule, the Plaintiffs still will not receive the relief they request in this case because DHS nonetheless will continue to consult with DOL and can effectuate the essential terms of the 2012 Rule—albeit under a different rule—based on DOL's advice (*see* 8 U.S.C. § 1101(a)(15)(H)(ii)), and thus, according to DOL, Plaintiffs will remain subject to the 2012 Rule's substantive terms, even if the 2012 Rule can no longer be

implemented. The Court disagrees. The relief Plaintiffs seek is invalidation of the 2012 Rule, plain and simple. In the event the Court grants that relief, the 2012 Rule cannot be enforced by any agency, including DHS. Whether DHS elects to publish another rule that says and does the same thing as the 2012 Rule is beside the point. The only question to be decided in this case is whether DOL had legislative rulemaking authority under the H–2B program when it promulgated the 2012 Rule. To be sure, this decision is more than academic. The Court thus rejects DOL's standing challenge.

### 2. Subject Matter Jurisdiction

DOL also argues that the Court "lacks jurisdiction over Plaintiffs' challenge to DHS's decision to grant controlling weight to the advisory opinions of DOL regarding labor market determinations in the H–2B program." According to DOL, "[b]ecause the consultation process between the Secretary of Homeland Security and the Secretary of Labor is committed to agency discretion by law, there is no judicially manageable standard by which the Court may review this consultation." DOL also asserts that "Congress specifically exempted the ... consultation process from judicial review under the Illegal Immigrant Reform and Immigrant Responsibility Act of 1996, as amended by the REAL ID Act of 2005." DOL misconstrues Plaintiffs' position. Plaintiffs do not challenge or seek to compel any action by *DHS.* Instead, Plaintiffs challenge *DOL's* authority to issue the 2012 Rule, which plainly is subject to judicial review under

---

**8.** Plaintiffs, as the parties invoking the Court's jurisdiction in this matter, bear the burden to establish standing. *See Warth,* 422 U.S. at 518, 95 S.Ct. 2197 ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke

judicial resolution of the dispute and the exercise of the court's remedial powers."); *see also Amnesty Int'l, USA v. Battle,* 559 F.3d 1170, 1177 (11th Cir.2009); *Elend v. Basham,* 471 F.3d 1199, 1206 (11th Cir.2006).

the APA. *See Motion Picture Ass'n of Am. v. F.C.C.*, 309 F.3d 796, 801 (D.C.Cir.2002) ("An agency may not promulgate even reasonable regulations that claim a force of law without delegated authority from Congress."); *Real v. Simon*, 510 F.2d 557, 564 (11th Cir.1975) ("There can be no doubt that the authority of an administrative agency to promulgate regulations is limited by the statute authorizing the regulations. Thus, an administrative agency has no power to create a rule or regulation that is out of harmony with the statutory grant of its authority.") (internal marks omitted); *see also* 5 U.S.C. § 706(2)(C) ("The reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."); *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986) ("We begin with the strong presumption that Congress intends judicial review of administrative action. From the beginning our cases have established that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress.") (internal marks

omitted). Contrary to DOL's assertions, even if judicial review of DHS' discretionary decisions is precluded by statute, that fact has no bearing on this Court's jurisdiction over Plaintiffs' claims in this case.[9]

### 3. DOL's Rulemaking Authority

■ Turning to DOL's authority to issue the 2012 Rule, "[i]t is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988); *see Am. Library Ass'n v. F.C.C.*, 406 F.3d 689, 698 (D.C.Cir.2005) (noting that a federal agency "literally has no power to act ... unless and until Congress confers power upon it") (internal marks omitted). Thus, in determining the validity of the regulation at issue in this case, the Court must first decide whether DOL was authorized by Congress to promulgate it. *See Gonzales v. Or.*, 546 U.S. 243, 258, 126 S.Ct. 904, 163 L.Ed.2d 748 (2006). "The starting point for this inquiry is, of course, the language of the delegation provision itself." *Id.* "In many cases authority is clear because the statute gives an agency broad power to enforce all pro-

---

**9.** DOL also argues that Plaintiffs failed to exhaust their administrative remedies, citing 5 U.S.C. § 553(e). According to DOL, "Plaintiffs' only real complaint is that DHS is not exercising rulemaking authority in this case, because they contend that DHS is the only agency with delegated authority under the INA to issue legislative rules." Again, DOL mischaracterizes Plaintiffs' position, as Plaintiffs do not challenge any action or inaction by DHS. Moreover, as set forth above, judicial review of DOL's actions with regard to the 2012 Rule is entirely appropriate because the 2012 Rule constitutes final agency action. *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."); *Darby v. Cisneros*, 509 U.S. 137, 144–47, 113

S.Ct. 2539, 125 L.Ed.2d 113 (1993) (concluding that federal courts cannot require the exhaustion of administrative remedies not specifically mandated as a prerequisite to judicial review); *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236–37 (11th Cir. 2003) (explaining that "final agency action" requires "the consummation of the agency's decisionmaking process" and action "by which rights or obligations have been determined") (internal marks omitted). Finally, "exhaustion of administrative remedies is not required when the issue involves only statutory construction, because there is no need for the administrative agency to develop a factual record or apply its expertise." *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir.1981) (internal marks omitted).

visions of the statute." *Id.* In this case, however, the INA contains no express delegation of authority to DOL.[10] The Court thus must consider whether DOL otherwise had legislative authority to promulgate the 2012 Rule.

In both the proposed and final 2012 Rule, DOL cited 8 U.S.C. §§ 1101(a)(15)(H)(ii)(b) and 1184(c)(1) as the bases of its authority to promulgate regulations impacting the H–2B program. *See* 76 Fed.Reg. 15,130 (March 18, 2011); 77 Fed.Reg. at 10,038, 10,043. As previously noted, the first statute, 8 U.S.C. § 1101(a)(15)(H)(ii)(b), defines an H–2B worker and the second statute, 8 U.S.C. § 1184(c)(1), directs the Secretary of DHS to consult with other governmental agencies when deciding whether to grant or deny an H–2B petition. Neither statute confers rulemaking authority on DOL, either explicitly or implicitly. Congress designated the Secretary of DHS, not DOL, to implement the INA's provisions. With regard to the H–2B program specifically, Congress tasked only DHS with determining whether applications for H–2B visas should be granted, *see* 8 U.S.C. § 1184(c)(1) ("The question of importing any alien as a non-immigrant under subparagraph (H) ... in any specific case or specific cases *shall* be determined by the [Secretary of DHS] ....") (emphasis added), and authorized only DHS to implement regulations establishing the conditions under which such visas would be issued, *see* 8 U.S.C. § 1184(a)(1) ("The admission to the United States of any alien as a non-immigrant *shall* be for such time and under such conditions as the [Secretary of DHS] may by regulations pre-

scribe....") (emphasis added). Although 8 U.S.C. § 1184(c)(1) does direct DHS to consult with other governmental agencies in deciding whether H–2B visas should be granted, nothing in the statute indicates that Congress intended to grant legislative rulemaking authority to those agencies or to allow DHS to delegate its rulemaking authority to them. *See, e.g., Manatee Cnty., Fla. v. Train*, 583 F.2d 179, 182 (5th Cir.1978)[11] ("Use of the word 'shall' generally indicates a mandatory intent unless a convincing argument to the contrary is made.") (internal marks omitted); *see also Lopez v. Davis*, 531 U.S. 230, 241, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001) (noting the contrast between use of the permissive "may" and the mandatory "shall"); *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998) ("The mandatory 'shall' ... normally creates an obligation impervious to judicial discretion."). Had Congress intended otherwise, it would have said so. *See, e.g., CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1226 (11th Cir.2001) ("[W]here Congress knows how to say something but chooses not to, its silence is controlling.") (internal marks omitted). Indeed, in a separate section of § 1184(c), Congress expressly authorized DHS to delegate to DOL the authority to impose administrative remedies, including penalties, on employers who fail to meet conditions of H–2B petitions and who make willful misrepresentations in H–2B petitions. *See* 8 U.S.C. § 1184(c)(14)(B). Additionally, in § 1188(a)(2), Congress expressly granted DOL limited rulemaking authority with respect to the H–2A program. *See* 8 U.S.C.

---

**10.** DOL concedes that it lacks express statutory authority to engage in legislative rulemaking under the H–2B program.

**11.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the

Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

§ 1188(a)(2) (authorizing the Secretary of Labor, in connection with the approval process for an H–2A petition, to "require by regulation, as a condition of issuing the certification, the payment of a fee to recover the reasonable costs of processing applications for certification"). Thus, while Congress never expressly prohibited DOL from promulgating regulations under the H–2B program, it plainly never granted DOL such authority despite the fact that it granted DOL limited rulemaking authority under the more heavily regulated H–2A program.

It would be anomalous for Congress to have granted DOL specific, limited authority under the H–2A program if it intended to give DOL general rulemaking authority under both the H–2A and H–2B programs. *See Gonzales,* 546 U.S. at 258–63, 126 S.Ct. 904; *see also Adams Fruit Co. v. Barrett,* 494 U.S. 638, 650, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990) (holding that a delegation of authority to promulgate motor vehicle safety standards did not "empower the Secretary [of Labor] to regulate the scope of the judicial power vested by the statute"); *Fed. Maritime Comm'n v. Seatrain Lines, Inc.,* 411 U.S. 726, 744, 93 S.Ct. 1773, 36 L.Ed.2d 620 (1973) (refusing, in light of specific grants of authority, to construe ambiguous provisions as creating

further authority, "a purpose for which [they] obviously w[ere] not intended"); *Motion Picture Ass'n,* 309 F.3d at 801; *Real,* 510 F.2d at 564. As the Supreme Court has observed, " 'where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir.1972)); *see Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 452, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (noting the "general principle of statutory construction" set forth in *Russello* ). The Court thus rejects DOL's position that 8 U.S.C. §§ 1101(a)(15)(H)(ii)(b) and 1184(c)(1) confer legislative rulemaking authority on the agency in connection with the H–2B program.[12]

The other statute DOL cites in support of its authority to issue the 2012 Rule, the Wagner–Peyser Act, 29 U.S.C. § 49 *et seq.,* likewise confers no rulemaking authority on the agency with respect to the H–2B program. DOL essentially argues that because it has express rulemaking authority under the Wagner–Peyser Act and must rely on the Wagner–Peyser

---

**12.** While Congress has made its intent with regard to the H–2B program clear in the statutes' text, it is worth noting that the legislative history of the H–2 program also supports the Court's plain language interpretation of the statutes. In H.R.Rep. No. 99–682, pt. 1, the Committee on Education and Labor noted that the regulations governing the H–2 program "d[id] not fully meet the need for an efficient, workable and coherent program that protects the interests of agricultural employers and workers alike." The Committee thus recommended that the H–2 program be divided into two separate components, one for agricultural workers and one for non-agricultural workers. *See* H.R. Rep. 99–682, pt. 1, at 34. As noted, Congress expressly granted

DOL limited rulemaking authority with regard to the H–2A program, which was subject to specific requirements not imposed on the H–2B program, but notably did not grant DOL similar authority with regard to the H–2B program. *See id.* Moreover, three years earlier, Congress considered and failed to enact legislation that would have authorized DOL to issue rules with respect to H–2 certifications. *See* H.R. 1510, 98th Cong. § 211(d) (1983); *see also Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 147–48, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). Congress, therefore, was aware at the time the Committee prepared H.R. Rep. 99–682 that DOL lacked general rulemaking authority under the H–2 program.

Act in fulfilling its consultative role under the H–2B program, it necessarily is authorized to issue regulations under the H–2B program. The Court again disagrees. Through the Wagner–Peyser Act, Congress created the United States Employment Service ("Service") within the Department of Labor "to promote the establishment and maintenance of a national system of public employment offices.…" 29 U.S.C. § 49. The Service's function is to "assist in coordinating the State public employment services throughout the country …." 29 U.S.C. § 49b(a). Congress expressly granted DOL the authority "to make such rules and regulations as may be necessary to carry out the provisions of" the Wagner–Peyser Act. *See* 29 U.S.C. § 49k. Although Congress's express grant of authority to DOL under the Wagner–Peyser Act is clear, it is equally clear that the statute does not extend to the H–2B program, which is entirely separate and distinct from the Wagner–Peyser Act and, as explained, falls instead under DHS's domain. *See Bayou Lawn*, 713 F.3d at 1085 n. 5 (observing that "the reliance on a statute that is limited to the funding, operation and coordination of state unemployment offices cannot be stretched to authorize DOL to issue rules to imple-

ment a visa program committed by law to the governance of another agency"). In addition, the fact that Congress explicitly granted DOL rulemaking authority under the Wagner–Peyser Act but not under the INA bolsters Plaintiffs' position that such authority is lacking under the INA. The Court therefore rejects DOL's position that its authority to issue the 2012 Rule stems from the Wagner–Peyser Act.[13]

The Court acknowledges that its conclusion regarding DOL's lack of rulemaking authority in connection with the H–2B program is arguably at odds with the decision of the Third Circuit Court of Appeals in *Louisiana Forestry Ass'n, Inc. v. Sec'y U.S. Dep't of Labor*, 745 F.3d 653 (3d Cir.2014). In *Louisiana Forestry*, the plaintiffs challenged a 2011 H–2B wage rule issued by DOL on a number of grounds, including that DOL lacked authority to promulgate the rule. According to the plaintiffs in that case, in issuing the rule, DOL acted pursuant to an unlawful sub-delegation of authority by DHS. *Id.* at 669. The defendants, which included both DOL *and DHS*, argued that DOL had authority to promulgate the rule because "DHS lawfully conditioned its granting of H–2B petitions on obtaining a labor certification from the DOL and permissibly en-

---

**13.** DOL argues that it "has long maintained that the Wagner–Peyser Act … is a basis for its rulemaking authority in the H–2 non-agricultural program." According to DOL, "[t]he Supreme Court has already stated that DOL's rulemaking authority in this area stems from the relationship between the Wagner–Peyser Act and the INA." In support of this proposition, DOL cites *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 595, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982). DOL's suggestion that the Supreme Court has recognized the Wagner–Peyser Act as a basis of its rulemaking authority under the H–2B program in *Snapp & Son* is strained, at best. By noting DOL's reliance on the Wagner–Peyser Act in making determinations as to the availability

of domestic workers, the Supreme Court in no way recognized DOL's rulemaking authority under the H–2B program.

The Court also notes that when citing the authority under which the 2012 Rule was proposed, as required by 5 U.S.C. § 553(b)(2), DOL did not reference the Wagner–Peyser Act. According to 5 U.S.C. § 553(b)(2), "[g]eneral notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with the law. The notice shall include … reference to the legal authority under which the rule is proposed …."

dowed the DOL limited rulemaking authority to carry out its charge of issuing certifications." *Id.* The Third Circuit agreed with the defendants, concluding that DOL had rulemaking authority under the H–213 program based on Congress's directive to DHS to consult with and obtain the advice of governmental agencies, such as DOL, in considering whether to grant H–213 petitions and DHS's subsequent conditioning of the grant of H–2B petitions on DOL's advice. *Id.* at 669, 674. Specifically, the Third Circuit reasoned that DOL's rulemaking authority "derives from regulation 214.2(h)(6)(iii), which was promulgated pursuant to the DHS's authority under sections 1101(a)(15)(H)(ii)(b) and 1184(c) of the INA to administer the nation's immigration laws, generally, and the H–2B program, specifically." *Id.* at 669.

 Although DHS's presence as a defendant in the *Louisiana Forestry* case distinguishes that case from this one,[14] the argument made by the defendants and accepted by the Third Circuit that DOL's rulemaking authority under the H–2B program derives from its consultative role under 8 U.S.C. § 1184(c)(1) is the same argument advanced by DOL throughout this case. However, as DOL acknowledges in its motion for summary judgment, this interpretation of "consultation" was rejected by the Eleventh Circuit in its order affirming this Court's issuance of the preliminary injunction in this case. *See Bayou Lawn*, 713 F.3d at 1084 (reasoning

that "[u]nder this theory of consultation, any federal employee with whom the Secretary of DHS deigns to consult would then have the 'authority to issue legislative rules to structure [his] consultation with DHS,'" which is "an absurd reading of the statute."). According to the Eleventh Circuit, "DHS was given overall responsibility, including rulemaking authority, for the H–2B program. DOL was designated a consultant. It cannot bootstrap that supporting role into a co-equal one."[15] *Id.* The undersigned agrees, and, with all due respect to the Third Circuit, finds no reason to depart from the Court's earlier position that DOL lacks authority to engage in legislative rulemaking under the H–2B program. The 2012 Rule, therefore, must be vacated. The parties' remaining arguments are moot.

Accordingly:

1. Plaintiffs' Motion for Summary Judgment (doc. 62) is **GRANTED**.

2. Defendants' Motion for Summary Judgment (doc. 60) is **DENIED**.

3. The Department of Labor's Final Rule dated February 21, 2012, and published at 77 Fed.Reg. 10,038, is hereby **VACATED** and Defendants are permanently enjoined from enforcing it.

4. The Clerk is directed to enter final judgment in favor of Plaintiffs and against Defendants.

---

**14.** The Third Circuit applied *Chevron* deference to DHS's interpretation of the INA. *See Louisiana Forestry*, 745 F.3d at 669–71. In *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the United States Supreme Court "command[ed] [courts] to defer to the interpretation of a statute by the agency charged with administering it, so long as the agency's interpretation is reason-

able and is not inconsistent with the language of the statute or congressional intent." *Jaramillo v. I.N.S.*, 1 F.3d 1149, 1152 (11th Cir. 1993).

**15.** The Eleventh Circuit also noted that 8 U.S.C. § 1101(a)(15)(H)(ii)(b) defines an H–2B worker and contains no delegation of authority to DOL, expressly or impliedly.