# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3307

_____

Union Pacific Railroad Company

*Petitioner*

Association of American Railroads

*Intervenor*

v.

Surface Transportation Board; United States of America

*Respondent*s

National Railroad Passenger Corporation; SMART-Transportation Division-New York State Legislative Board; National Association of Railroad Passengers; All Aboard Indiana; All Aboard Ohio; All Aboard Wisconsin; Friends of the Cardinal; Environmental Law and Policy Center; Michigan Association of Rail Passengers, Inc; Midwest High Speed Rail Association; Southern Rail Commission; Virginians for High Speed Rail

*Intervenor*s

------------------------------

Chamber of Commerce of the United States of America; Professor Neomi Rao

*Amici on Behalf of Petitioner*

United States Conference of Mayors

*Amicus on Behalf of Respondent*

_____

No. 16-3504
_____

Association of American Railroads

*Petitioner*

v.

Surface Transportation Board; United States of America

*Respondent*s

National Railroad Passenger Corporation; SMART-Transportation Division-New York State Legislative Board; National Association of Railroad Passengers; All Aboard Indiana; All Aboard Ohio; All Aboard Wisconsin; Friends of the Cardinal; Environmental Law and Policy Center; Michigan Association of Rail Passengers, Inc; Midwest High Speed Rail Association; Southern Rail Commission; Virginians for High Speed Rail

*Intervenor*s

-------------------------------

United States Conference of Mayors

*Amicus on Behalf of Respondent*

Chamber of Commerce of the United States of America; Professor Neomi Rao

*Amici on Behalf of Petitioner*

_____

No. 16-3512
_____

CSX Transportation

*Petitioner*

Association of American Railroads

*Intervenor*

v.

Surface Transportation Board; United States of America

*Respondent*s

National Railroad Passenger Corporation; SMART-Transportation Division-New York State Legislative Board; National Association of Railroad Passengers; All Aboard Indiana; All Aboard Ohio; All Aboard Wisconsin; Friends of the Cardinal; Environmental Law and Policy Center; Michigan Association of Rail Passengers, Inc; Midwest High Speed Rail Association; Southern Rail Commission; Virginians for High Speed Rail

*Intervenor*s

------------------------------

Chamber of Commerce of the United States of America

*Amicus on Behalf of Petitioner*

United States Conference of Mayors

*Amicus on Behalf of Respondent*

Professor Neomi Rao

*Amicus on Behalf of Petitioner*

_____

No. 16-3513

_____

Norfolk Southern Railway Company

*Petitioner*

Association of American Railroads

*Intervenor*

v.

Surface Transportation Board; United States of America

*Respondent*s

National Railroad Passenger Corporation; SMART-Transportation Division-New York State Legislative Board; National Association of Railroad Passengers; All Aboard Indiana; All Aboard Ohio; All Aboard Wisconsin; Friends of the Cardinal; Environmental Law and Policy Center; Michigan Association of Rail Passengers, Inc; Midwest High Speed Rail Association; Southern Rail Commission; Virginians for High Speed Rail

*Intervenor*s

------------------------------

Chamber of Commerce of the United States of America

*Amicus on Behalf of Petitioner*

United States Conference of Mayors

*Amicus on Behalf of Respondent*

Professor Neomi Rao

*Amicus on Behalf of Petitioner*

_____

No. 16-3514

_____

Canadian National Railway Company; Illinois Central Railroad Company; Grand Trunk Western Railroad Company

*Petitioner*s

Association of American Railroads

*Intervenor*

v.

Surface Transportation Board; United States of America

*Respondent*s

National Railroad Passenger Corporation; SMART-Transportation Division-New York State Legislative Board; National Association of Railroad Passengers; All Aboard Indiana; All Aboard Ohio; All Aboard Wisconsin; Friends of the Cardinal; Environmental Law and Policy Center; Michigan Association of Rail Passengers, Inc; Midwest High Speed Rail Association; Southern Rail Commission; Virginians for High Speed Rail

*Intervenor*s

------------------------------

Chamber of Commerce of the United States of America

*Amicus on Behalf of Petitioner*

United States Conference of Mayors

*Amicus on Behalf of Respondent*

Professor Neomi Rao

*Amicus on Behalf of Petitioner*

_____

Petition for Review of an Order of the
Surface Transportation Board

_____

Submitted: February 8, 2017
Filed: July 12, 2017

_____

Before SMITH,[1] BENTON and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

When Congress expressly delegates rulemaking authority in a regulatory sphere to one agency, and that delegation is declared unconstitutional, may a different agency provide regulatory guidance in the same sphere on its own initiative? The Surface Transportation Board ("Board") said yes—and on that basis it promulgated

_____

[1]The Honorable Lavenski R. Smith became Chief Judge of the United States Court of Appeals for the Eighth Circuit on March 11, 2017.

a rule defining "on-time performance" under the Passenger Rail Investment and Improvement Act of 2008 after the Act's delegation to another agency was invalidated. Now the Board argues that the Act itself allows the Board to promulgate on-time performance standards. Because the Board's interpretation contradicts the Act's plain language, we grant these consolidated petitions and hold that the Board exceeded its authority.

I. *Background*

A. *Statutory Background*

The National Railroad Passenger Corporation ("Amtrak") and freight railroad companies share the nation's railways. Congress created Amtrak as a passenger railroad in 1970. *Dep't of Transp. v. Assoc. of Am. R.Rs.*, 135 S. Ct. 1225, 1228 (2015). Amtrak relieved freight railroads of their common-carrier obligation to offer passenger service, and in exchange it received the right to use freight-railroad tracks and facilities at rates set by agreement or by the Interstate Commerce Commission, a now-defunct agency. *Id.* at 1229. Congress later granted Amtrak a statutory preference over freight railroads on shared track. *Id.* But in 2008, the Department of Transportation's Inspector General reported that this preference right was weak. Office of Inspector Gen., Fed. R.R. Admin., CR-2008-076, Root Causes of Amtrak Train Delays 4 (2008). He noted that freight railroads could "adjust their dispatching practices" to give their own trains an advantage over Amtrak. *Id.*

To address this situation, Congress enacted the Passenger Rail Investment and Improvement Act of 2008, Pub. L. No. 110-432, 122 Stat. 4907 (PRIIA). Two sections of the Act are relevant here. The first, § 207(a), instructs the Federal Railroad Administration (FRA) and Amtrak, jointly and in consultation with other groups, to "develop new or improve existing metrics and minimum standards for measuring the performance and service quality of intercity passenger train operations, including cost recovery, on-time performance and minutes of delay, ridership, on-board services, stations, facilities, equipment, and other services." *Id.* § 207(a) (codified at 49 U.S.C.

§ 24101 (note)). These metrics must include "measures of on-time performance and delays incurred by intercity passenger trains on the rail lines of each rail carrier." *Id.*

The metrics and standards have at least four uses: (1) they are the basis for quarterly reports published by the FRA, *id.* § 207(b); (2) they are the basis for an annual evaluation by Amtrak, *id.* § 210(a) (codified at 49 U.S.C. § 24710); (3) they are a benchmark for a performance improvement plan to be developed by Amtrak, *id.*; and (4) at least some of the metrics and standards trigger Board investigations into freight railroads' compliance with Amtrak's statutory preference right, *id.* § 213(a) (codified at 49 U.S.C. § 24308(f)).

The second relevant section is § 213(a). Congress added § 213(a) to 49 U.S.C. § 24308, the Code provision containing Amtrak's statutory preference right. *See* 122 Stat. at 4925. Section 213(a) authorizes, and sometimes requires, the Board to investigate when an Amtrak train fails to meet certain performance standards. PRIIA § 213(a). If the Board determines that the failure is attributable to the host railroad's failure to honor Amtrak's preference right, then the Board may award damages and other relief. *Id*. An investigation is authorized

> [i]f the on-time performance of any intercity passenger train averages less than 80 percent for any 2 consecutive calendar quarters, or the service quality of intercity passenger train operations for which minimum standards are established under section 207 of the Passenger Rail Investment and Improvement Act of 2008 fails to meet those standards for 2 consecutive calendar quarters . . . .

*Id*. This case addresses how "on-time performance" is defined for purposes of § 213(a).

## B. *Procedural Background*

This case developed from agency proceedings and court litigation addressing §§ 207 and 213.

### 1. *The § 207 On-Time Performance Rule and Ensuing Litigation.*

In May 2010, the FRA and Amtrak issued the § 207 metrics and standards. *See* Metrics and Standards for Intercity Passenger Rail Service under Section 207 of the Passenger Rail Investment and Improvement Act of 2008, 75 Fed. Reg. 26,839 (May 12, 2010). These included a metric for on-time performance. Fed. R.R. Admin., Metrics and Standards for Intercity Passenger Rail Service 26 (2010), https://www.fra.dot.gov/eLib/Details/L02875.

In 2011, the Association of American Railroads sued to have § 207 declared unconstitutional on the grounds that it (1) unlawfully delegated rule-making authority to a private entity in violation of the nondelegation doctrine and the separation-of-powers principle, and (2) unlawfully vested government power in an interested private party in violation of the Due Process Clause. *Assoc. of Am. R.Rs.*, 135 S. Ct. at 1230. The district court rejected both claims on summary judgment, but the D.C. Circuit reversed on the nondelegation and separation-of-powers claim, concluding that Amtrak was a private entity and therefore could not be granted regulatory power. *Id.* at 1230–31. In 2015, the Supreme Court vacated the D.C. Circuit's judgment and remanded, holding that for purposes of the constitutional issues at play, Amtrak was "a governmental entity, not a private one." *Id.* at 1233.

On remand in April 2016, the D.C. Circuit found § 207 unconstitutional on a different ground. It concluded that § 207 "violates the Fifth Amendment's Due Process Clause by authorizing an economically self-interested actor to regulate its competitors." *Assoc. of Am. R.Rs. v. Dep't of Transp.*, 821 F.3d 19, 23 (D.C. Cir. 2016). The government did not seek Supreme Court review. In March 2017, on remand from the D.C. Circuit, the district court entered judgment for the Association

of American Railroads.[2] Consequently, the FRA and Amtrak lacked authority to establish on-time performance rules under § 207 of the PRIIA. The 2010 on-time performance metric is therefore currently unenforceable.

### 2. *The § 213(a) On-Time Performance Rule*

While the D.C. Circuit litigation was proceeding, the Board also addressed the question of on-time performance. In December 2014, while the FRA's on-time performance rule was unenforceable and awaiting Supreme Court review, the Board considered Amtrak complaints about on-time performance on the "Illini/Saluki" service between Chicago and Carbondale, Illinois. *Nat'l R.R. Passenger Corp. Section 213 Investigation of Substandard Performance on Rail Lines of Canadian Nat'l Ry. Co.*, No. NOR 42134, 2014 WL 7236883 (S.T.B. Dec. 19, 2014). The Board concluded that the lack of an enforceable on-time performance standard under § 207 did not preclude on-time performance investigations under § 213(a). *Id.* at *2. The Board determined that it possessed authority to "initiate investigations of on-time performance problems under Section 213 of PRIIA because the . . . on-time performance trigger in Section 213 is severable from the mechanism for promulgating standards of 'on-time performance' under Section 207." *Id.* at *2. The Board acknowledged that it did not have its own definition of on-time performance and thus authorized itself to "construe" that term in § 213(a). *Id.* at *1. It then requested the parties' input in giving meaning to § 213(a)'s on-time performance metric. *Id.* at *8.

The Association of American Railroads and others asked the Board to define on-time performance through a rulemaking proceeding rather than as part of the Illini/Saluki adjudication proceeding. In May 2015, the Board obliged. *See* On-Time Performance Under Section 213 of the Passenger Rail Investment and Improvement Act of 2008, 80 Fed. Reg. 28,928 (May 20, 2015). In December 2015, the Board

---

[2] The case is now back on appeal to the D.C. Circuit. *See* No. 17-5123 (D.C. Cir.).

posted its proposed rule for public comment. *See* On-Time Performance Under Section 213 of the Passenger Rail Investment and Improvement Act of 2008, 80 Fed. Reg. 80,737 (Dec. 28, 2015). And in August 2016, the Board published a final on-time performance rule. *See* On-Time Performance Under Section 213 of the Passenger Rail Investment and Improvement Act of 2008, 81 Fed. Reg. 51,343 (Aug. 4, 2016).

The instant petitions for review concern the August 2016 final rule ("Final Rule"). Various individual railroads and the Association of American Railroads (together, the "Freight Railroads") challenge the Final Rule's content and the Board's authority to issue it.[3] The Board justified the Final Rule on the basis of necessity: "the only way for the Board now to fulfill its responsibilities under [§ 213] is to define [on-time performance] as a threshold for such investigations." *Id.* at 51,345. In other words, "the invalidation of Section 207 of PRIIA leaves a gap that the Board has the delegated authority to fill by virtue of its authority to adjudicate complaints brought by Amtrak" under § 213(a). *Id.* "Any other result," said the Board, "would gut the remedial scheme, a result that Congress clearly did not intend." *Id.* Thus, the Board claimed authority to "fill the definitional gap exposed by the invalidation of a statutory provision." *Id.* at n.3.

## II. *Discussion*

Agency action taken without statutory authority must be set aside. 5 U.S.C. § 706(2)(C). "An agency's promulgation of rules without valid statutory authority implicates core notions of the separation of powers, and we are required by Congress to set these regulations aside." *U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252, 1257 (8th Cir. 1998). Indeed, "[i]t is axiomatic that an administrative

---

[3]As to content, the Final Rule defines on-time performance as arriving at or departing from a given station 15 minutes after the scheduled time based on an "all stations" approach. *Id.* at 51,343; *see also* 49 C.F.R. § 1040.2. Because we decide this appeal on the basis of the Board's authority, we do not address the Freight Railroads' challenges to the Final Rule's content.

agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). The Board advances two arguments for its authority to promulgate an on-time performance rule under § 213(a). The first is situational; the second is textual.

## A. *Gap-Filling*

The Final Rule expressly bases its authority on the need to fill the vacuum created by the invalidation of the on-time performance rule announced by the FRA and Amtrak under § 207. The Final Rule invokes the Board's "implicit authority to fill a gap exposed by the . . . invalidation of a portion of a statute." 81 Fed. Reg. at 51,345. If the Board is to investigate alleged violations of Amtrak's statutory preference right, the argument goes, then the Board must have implied authority to develop an on-time performance rule when the § 207 rule is invalidated.

The Final Rule cites two agency gap-filling cases as precedent for its assertion of authority. Those cases affirmed the Social Security Commissioner's reassignment of some retired coal miners to new benefits providers under the Coal Act after the Supreme Court invalidated certain prior assignments. *See Sidney Coal Co. v. Soc. Sec. Admin.*, 427 F.3d 336, 346 (6th Cir. 2005); *Pittston Co. v. United States*, 368 F.3d 385, 392, 401–04 (4th Cir. 2004). But in those cases, unlike this one, Congress had already directed the Commissioner to make assignments in the first place. *See Pittston Co.*, 368 F.3d at 399. And the reassignments did not "violate[] or disturb[] the structure of the Coal Act," or "change the wording of the statute." *Id.* at 404. Here, on the other hand, the Final Rule acknowledges that Congress initially charged a different agency with developing the relevant rule.

We consider *Bayou Lawn & Landscape Services v. Secretary of Labor*, 713 F.3d 1080 (11th Cir. 2013), to be the more analogous precedent. There, Congress had delegated limited rulemaking authority to the Department of Labor for a program governing agricultural workers but had not done so for a similar program governing

-12-

non-agricultural workers. *Id.* at 1083. The Department nonetheless issued rules for the non-agricultural program. *Id.* The Eleventh Circuit affirmed an injunction against these rules as exceeding the Department's authority. *Id.* at 1084–85. "The absence of a delegation of rulemaking authority to [the Department] over the non-agricultural H–2B program in the presence of a specific delegation to it of rulemaking authority over the agricultural worker H–2A program" persuaded the court that "Congress knew what it was doing when it crafted these sections." *Id.* at 1084. In response to the Department's appeal to the "text, structure and object" of the statute, the court noted that Congress had expressly delegated the authority at issue to a different agency. *Id.* "[W]e would be hard-pressed," said the court, "to locate [rule-making authority] in one agency where it had been specifically and expressly delegated by Congress to a different agency." *Id.* at 1085. So too in this case. Congress's express delegation to the FRA and Amtrak in § 207(a) overcomes any implied situational authority claimed by the Board under § 213(a). In sum, the gap-filling rationale does not allow one agency to assume the authority expressly delegated to another.

The Board also casts its gap-filling rationale as an application of the principle expressed in *United States v. Booker* that courts must "refrain from invalidating more of the statute than is necessary." 543 U.S. 220, 258 (2005) (quoting *Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984) (plurality opinion)). *Booker* retained portions of the Sentencing Reform Act that were constitutionally valid, capable of functioning independently, and consistent with the congressional objectives behind the Act. *Id.* at 258–59. The Board's reliance on *Booker*, however, fails. Saying that § 213(a) of the PRIIA may function independent of § 207 assumes the very issue in dispute: that § 213(a) provides independent authority for developing an on-time performance rule. If § 213(a) does not provide this authority, then it cannot function independent of § 207. This case therefore depends on the text of § 213(a).

-13-

B. *Textual Authority*

Before reaching the merits of the Board's textual argument, we must address whether we may even consider it, and, if so, whether the Board's interpretation is entitled to deference.

1. *New Basis?*

In this review proceeding, the Board has moved away from the gap-filling rationale it asserted when adopting the Final Rule. It now focuses on the text of § 213(a), arguing that the term "on-time performance" in § 213(a) does not mean the on-time performance metric entrusted to the FRA and Amtrak under § 207(a), but rather a different metric entrusted to the Board itself. In response, the Freight Railroads point out that we may uphold the Final Rule only on the basis given when it was adopted. *See Michigan v. Envtl. Prot. Agency*, 135 S. Ct. 2699, 2710 (2015).

The record reflects that in adopting the Final Rule, the Board principally relied on its gap-filling rationale rather than a textual analysis of § 213(a). The Final Rule repeatedly invokes situational necessity and demonstrates that this rationale was not merely an alternative explanation, as the Board now suggests. We note, however, that the Final Rule does cite the Illini/Saluki decision, and the Illini/Saluki decision does invoke the "plain language of Section 213" to support the conclusion that § 213(a)'s on-time performance standard is separate from § 207(a)'s. *Nat'l R.R. Passenger Corp.*, 2014 WL 7236883, at \*5; *see Gatewood v. Outlaw*, 560 F.3d 843, 847 (8th Cir. 2009) (noting that it is sometimes appropriate to discern the reasons for a final rule from prior statements reflecting a consistent policy). We will therefore give the Board the benefit of the doubt and consider its textual argument on the merits.

## 2. Chevron *Deference*

The Board argues that § 213(a) calls for *Chevron* deference.[4] We disagree. "[F]or *Chevron* deference to apply, the agency must have received congressional authority to determine the particular matter at issue in the particular manner adopted." *City of Arlington v. F.C.C.*, 133 S. Ct. 1863, 1874 (2013). As we will see below, the Board received no such authority here. Moreover, even if *Chevron* deference applied, it would not actually afford the Board any deference—Congress's intent in § 213(a) is clear, so "that is the end of the matter." *Id.* at 1868.

## 3. *Merits*

We turn now to the text at issue:

> If the on-time performance of any intercity passenger train averages less than 80 percent for any 2 consecutive calendar quarters, or the service quality of intercity passenger train operations for which minimum standards are established under section 207 of the Passenger Rail Investment and Improvement Act of 2008 fails to meet those standards for 2 consecutive calendar quarters, the Surface Transportation Board (referred to in this section as the 'Board') may initiate an investigation, or upon the filing of a complaint by Amtrak, an intercity passenger rail operator, a host freight railroad over which Amtrak operates, or an entity for which Amtrak operates intercity passenger rail service, the Board shall initiate such an investigation . . . .

PRIIA § 213(a). The Board's argument is simple: this text creates two separate triggers for Board investigations. The first is the failure to achieve on-time performance at least 80 percent of the time, and the second is the failure to meet "service quality" standards as established under § 207. Because the § 207 metrics and standards are mentioned only in connection with the second trigger, the on-time

---

[4] *See Chevron, U.S.A. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

performance trigger is separate, and therefore the Board may develop its own on-time performance metric apart from § 207.

Reading § 213(a) in isolation, the Board's interpretation is reasonable. The "established under section 207" reference modifies "service quality," not "on-time performance." And Congress knew how to tie § 213(a) to § 207, so its failure to expressly do so for "on-time performance" might suggest that it chose to leave the § 213(a) definition of on-time performance in the Board's hands. *See Loughrin v. United States*, 134 S. Ct. 2384, 2390 (2014) (inclusion of particular language in one section but not another raises a presumption that Congress "intended a difference in meaning"). But discrete grammar rules and canons of construction are "not an absolute and can assuredly be overcome by other indicia of meaning." *Lockhart v. United States*, 136 S. Ct. 958, 963 (2016) (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)). And such rules "need not be applied 'in a mechanical way where it would require accepting "unlikely premises."'" *Id.* at 965 (quoting *Paroline v. United States*, 134 S. Ct. 1710, 1721 (2014)). Importantly, "text and context" may supply even an "awkwardly phrased" statute with a "straightforward reading." *Id.* at 962.

The Board's interpretation fades in the light of the full text and context. First, despite § 213(a)'s heading—"Investigation of Substandard Performance"—"on-time performance" is not a defined term in the statute. In the absence of a statutory definition, we will give a term its ordinary dictionary meaning. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2002 (2012). But "on-time performance" is a term of art. *See F.A.A. v. Cooper*, 566 U.S. 284, 291–92 (2012) (general dictionary definition not used for terms of art). We therefore look to context for guidance. *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989). The only place in the PRIIA where on-time performance is described and given an explicit source is § 207(a), which instructs the FRA and Amtrak to "develop new or improve existing metrics and minimum standards for measuring the performance and service quality of intercity passenger train operations, including cost recovery, on-time performance and minutes

of delay." PRIIA § 207(a). Section 207(a), then, is the natural source for the meaning of "on-time performance" in § 213(a). This follows, too, from the principle that a term is presumed to have the same meaning throughout the same statute. *See Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702, 1708 (2012). This presumption of course "yields readily to indications that the same phrase used in different parts of the same statute means different things." *Barber v. Thomas*, 560 U.S. 474, 484 (2010). But there are no such indications in the PRIIA.

Second, Congress likely did not give the FRA/Amtrak and the Board separate authority to develop two potentially conflicting on-time performance rules. *See Lockhart*, 136 S. Ct. at 963 (interpretation should not rest on an unlikely premise). The § 207 on-time-performance metric was, to the extent practicable, to be incorporated into Amtrak's contracts with host railroads. PRIIA § 207(c). If the Board could separately adopt its own metric for investigations under § 213(a), then host railroads could be investigated under a stricter § 213(a) metric even while complying with the § 207 metric embedded in their contracts. The Board responds that there were never actually two standards, because the § 207 rule was invalidated. Yet we focus on what Congress intended when it spoke. It likely did not intend to establish potentially competing standards.

A common-sense reading of how on-time performance functions in the PRIIA reveals that the FRA and Amtrak develop metrics and standards, including for on-time performance, and then the FRA publishes quarterly reports showing Amtrak's performance under the metrics. If Amtrak's on-time performance is worse than 80 percent for two consecutive quarters, then the Board may investigate. In any event, on-time performance in § 213(a) means on-time performance as developed by the FRA and Amtrak under § 207(a). We therefore reject the Board's interpretation of § 213(a).

### III. *Conclusion*

Accordingly, we grant the petitions and vacate the Board's Final Rule defining on-time performance.

———————————————